BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| **In re: Syngenta AG MIR162 Corn Litigation** | : | MDL Docket No. 2591 |
| *Tweet, et al. v. Syngenta AG, et al.*, | : |  |
| No. 3:13-cv-00255-DRH (S.D. Ill.) | : |  |

## ABCD DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER NO. 63

Defendants Archer Daniels Midland Company ("ADM"), Bunge North America, Inc., Cargill, Incorporated, and Louis Dreyfus Company LLC[1] (collectively, the "ABCD Defendants"[2]), by and through the undersigned counsel, respectfully file this Opposition to Plaintiffs' Motion to Vacate ("Mot.") Conditional Transfer Order No. 63 ("CTO-63"). The motion to vacate is an obvious attempt to forum shop and to evade the very purposes of 28 U.S.C. § 1407 and the multidistrict litigation process created by Congress. The motion to vacate, at a minimum, should be denied with respect to the 709 Plaintiffs in the case who originally filed their claims in federal court, *see* 28 U.S.C. § 1407(a), and respectfully can be denied as to the remaining three Plaintiffs over whom jurisdiction originally attached pursuant to the Class Action Fairness Act's ("CAFA"), Pub. L. No. 109–2, 119 Stat. 4, mass action provisions upon removal of those three Plaintiffs' claims to federal court.[3]

---

[1] Louis Dreyfus Commodities LLC recently changed its name to Louis Dreyfus Company LLC.

[2] To date, Plaintiffs have not served their original or amended complaints on Cargill International SA or Louis Dreyfus Commodities, B.V., both of which are located outside of the United States. Those entities, therefore, have not yet appeared in this action.

[3] Those original three plaintiffs are Larry Miller, Bradley A. Ferree, and Leroy Tweet.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In 2014, this Panel created MDL 2591 in order to centralize litigation surrounding Syngenta's[4] commercialization of a genetically-modified corn trait, MIR162, which Syngenta negligently introduced into the U.S. corn supply without having received approval for import from the Chinese government, thereby causing significant harm to market participants. *See In re Syngenta AG MIR162 Corn Litig.*, 65 F. Supp. 3d 1401, 1402 (J.P.M.L. 2014).[5] That MDL is currently pending before Judge Lungstrum of the United States District Court for the District of Kansas. *In re Syngenta AG MIR162 Corn Litig.*, No. 14-md-2591 (D. Kan.). In addition to presiding over very active discovery, the MDL court has, among other things, decided Syngenta's motions to dismiss claims against it that are similar to Plaintiffs' claims against Syngenta here, *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177 (D. Kan. 2015), and dismissed on the merits claims against the ABCD Defendants that Syngenta brought under indemnity and contribution theories that mirror the instant Plaintiffs' liability theories, *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, 2016 WL 1312519 (D. Kan. Apr. 4, 2016).

Three of the 712 plaintiffs in this case filed their claims initially in Illinois state court, as part of a larger group of claims against various Syngenta entities brought in three separate lawsuits which each had over 100 plaintiffs. *See Poletti, et al., v. Syngenta AG, et al.*, No. 15-L-1219 (3rd Jud. Cir. [Madison County] Sept. 18, 2015); *Wiemers Farms, Inc., et al. v. Syngenta Corp., et al.*, No. 15-L-1504 (3rd Jud. Cir. [Madison County] Nov. 17, 2015); *Brase Farms, Inc., et al. v. Syngenta Corp., et al.*, No. 15-L-1483 (3rd Jud. Cir. [Madison County] Nov. 16, 2015).

---

[4] Syngenta Corp., Syngenta Crop Protection, LLC, and Syngenta Seeds, Inc. (collectively, "Syngenta").

[5] As this Panel explained in creating the MDL, "centralization in the District of Kansas will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation"— litigation that includes as plaintiffs "grain exporters," like the ABCD Defendants. *In re Syngenta AG MIR162 Corn Litig.*, 65 F. Supp. 3d at 1401.

In 2015, Syngenta removed those three actions to the Southern District of Illinois under the "mass action" provision of CAFA, 28 U.S.C. § 1332(d)(11), where they were then consolidated. After removal, three plaintiffs from the mass action retained new counsel and indicated they intended to sue the ABCD Defendants—which are grain handlers—in addition to Syngenta.[6]

Accordingly, after consolidation, the transferor court severed those three plaintiffs and formed two separate civil actions, with the three plaintiffs who desired to bring claims against Syngenta and the ABCD Defendants (the "*Tweet* Plaintiffs") placed in a lawsuit captioned *Tweet*. *See In Re Syngenta Mass Tort Actions*, Case No. 3:15-cv-01221-DRH, Dkt. No. 14 (S.D. Ill. Nov. 16, 2015). The other plaintiffs remained in an action against Syngenta alone, captioned *Poletti*.

In April 2016, Plaintiffs' counsel filed a Third Amended Complaint in *Tweet*. In an obvious attempt to avoid litigating in MDL 2591, which had recently granted ADM's and Cargill's (*i.e.*, two of the ABCD Defendants) motion to dismiss third-party claims brought against them by Syngenta—claims that were virtually identical to the ones brought by the *Tweet* plaintiffs against the ABCD Defendants—the Third Amended Complaint added claims on behalf of *709* new plaintiffs. *See* Third Am. Consol. Compl., Dkt. 64, *In Re Syngenta Mass Tort Actions*, Case No. 3:16-cv-00255-DRH (S.D. Ill. May 6, 2016). That is, of the 712 plaintiffs in this case, 709 of them originally commenced their suits in federal court in the Third Amended Complaint and sought to use the original three plaintiffs as their jurisdictional "hook" to remain in the United States District Court for the Southern District of Illinois, but avoid transfer to the 2591 MDL, since actions removed under the mass action provision of CAFA typically cannot be

---

[6] Those counsel, who also filed the motion to vacate at issue here, are also representing certain plaintiffs who are suing the ABCD Defendants in several putative class actions currently pending in the MDL. Additionally, those counsel represent hundreds of individual plaintiffs who are suing the ABCD Defendants in Illinois state court.

3

transferred to an MDL. *See* 28 U.S.C. § 1332(d)(11)(C)(i).[7] The overwhelming majority of these 709 plaintiffs are completely diverse from defendants, Third. Am. Compl. ¶¶ 11-741, and each plaintiff individually pleaded that the $75,000 amount-in-controversy requirement was met, *id.* ¶¶ 13-723.[8]

In CTO-63, this Panel recognized that this tag-along action, *Tweet, et al. v. Syngenta AG, et al.*, No. 16-255 (S.D. Ill.), "involve[s] questions of fact common to the actions previously transferred" to MDL 2591 such that transfer pursuant to 28 U.S.C. § 1407 is appropriate. CTO-63, Dkt. 605, *In re Syngenta AG MIR162 Corn Litig.*, MDL No. 2591 (J.P.M.L. May 18, 2016). Plaintiffs did not dispute this Panel's findings or otherwise argue that this action does not satisfy the requirements of § 1407. Nonetheless, Plaintiffs moved to vacate the CTO based on the premise that no matter how many new claims and plaintiffs are joined to a case that once was removed to federal court under CAFA's mass action provisions, 28 U.S.C. § 1332(d)(11), no part of the case *ever* may be transferred pursuant to 28 U.S.C. § 1407.

## ARGUMENT

The rule upon which Plaintiffs seek to prevent transfer would read CAFA's mass action provisions in a manner contrary to Congress's intent, and would effect the type of partial repeal of 28 U.S.C. § 1407 that this Panel repeatedly has rejected in light of CAFA's text and purposes. Indeed, granting the motion to vacate would undermine the entire multidistrict litigation process, and encourage the very kind of forum shopping that Congress sought to constrain.

---

[7] As Plaintiffs recognized, the three original *Tweet* Plaintiffs were severed and placed in their own action "'for the purpose of case management.'" Mot. 3 (quoting Severance Order). Thus, it is unclear whether the transferor court views the *Tweet* Plaintiffs as truly distinct from the *Poletti* plaintiffs whose action remains pending and originally satisfied the CAFA mass action requirements for removal.

[8] Plaintiffs' Motion suggests that "had the 709 plaintiffs filed their lawsuits individually in state court," they would have been removable. Mot. 7.

4

Plaintiffs' motion fails to dispute that—as ADM's tag-along letter explained—"[CAFA] does not enable original jurisdiction over mass actions; it only states that such actions are subject to removal." *Newberg on Class Actions* § 6:24 (5th ed.). The 709 plaintiffs who originally filed their claims in federal court did not bring actions subject to mass action jurisdiction. And therefore the only barrier to transfer that Plaintiffs actually assert is plainly inapplicable to those 709 plaintiffs. *See* 28 U.S.C. § 1332(d)(11)(C)(i) ("Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court pursuant to section 1407 . . . .").

Plaintiffs' arguments against transfer are built on a false premise and, as a consequence, attack a straw man. Plaintiffs contend that ADM asserted that "adding [709] plaintiffs" to this case whose earlier formulations were once removed to federal court under CAFA's mass action provisions "divested the [transferor court] of its jurisdiction under CAFA." Mot. 3.[9] ADM did not—and the ABCD Defendants do not—contend that the joinder of the 709 new Plaintiffs *divested* the federal courts of CAFA mass action jurisdiction that existed over the action originally removed. But that is irrelevant here. Assuming *arguendo* that the federal district courts may retain CAFA mass action jurisdiction over the three *Tweet* Plaintiffs, this does not mean that those courts have CAFA mass action jurisdiction over the other 709 Plaintiffs whose claims were filed in federal court in the first instance. Indeed, that is no more true than it would be to say that, simply because a court originally exercised federal question jurisdiction over a case pursuant to 28 U.S.C. § 1331, the court then exercised federal question jurisdiction over 709

---

[9] *Id.* at 1 ("The post-removal severance of *Tweet* from *Poletti* did not divest the Transferor Court of CAFA jurisdiction."); *id.* at 4 ("the addition of plaintiffs to this civil action neither divests nor destroys the Transferor Court's jurisdiction over the suit"); *id.* ("severance or 'addition of parties' does not divest a federal court of CAFA jurisdiction"); *id.* at 5 ("did not divest that Court of jurisdiction under CAFA"); *id.* at 6 ("addition of parties . . . would not divest the Transferor Court of CAFA jurisdiction"); *id.* at 7 ("addition of these 709 plaintiffs . . . did not divest the Transferor Court of CAFA jurisdiction"); *id.* at 8-9 (same).

5

newly-joined plaintiffs who brought claims under state law alone, *see* 28 U.S.C. § 1367, or than it would be to say that a court that originally exercised CAFA jurisdiction over a class action filed in federal court pursuant to § 1332(d)(2) likewise exercised CAFA, not supplemental, jurisdiction over 709 newly-joined Plaintiffs who brought claims only in their individual capacities.

Rather, any federal jurisdiction that exists over these 709 newly-joined Plaintiffs is based on traditional diversity, 28 U.S.C. § 1332(b).  As a consequence, the claims of the newly-added Plaintiffs at issue—which clearly were not "*removed* to Federal court," 28 U.S.C. § 1332(d)(11)(C)(i) (emphasis added)—are not exempt from transfer pursuant to 28 U.S.C. § 1407.  Plaintiffs point to nothing that supports a contrary conclusion.

Accordingly, Plaintiffs' motion to vacate should be denied, at a minimum, with respect to the 709 Plaintiffs whose civil action commenced when they filed their Third Amended Complaint in order to assert their claims in federal court, and, in the alternative, denied as to all 712 Plaintiffs.

> **A.   The 709 newly-joined Plaintiffs are properly subject to transfer pursuant to section 1407, because their claims were *not* "removed to Federal court" within the meaning of 28 U.S.C. § 1332(d)(11)(C)(i).**

Although federal removal jurisdiction and original jurisdiction are, for the most part, coterminous, *see generally Hurt v. Dow Chem. Co.*, 963 F.2d 1142, 1144 (8th Cir. 1992), that is not the case with respect to the "mass action" provisions of CAFA.[10]  "Under [CAFA], defendants in civil suits may remove 'mass actions' from state to federal court." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 739 (2014); 28 U.S.C. § 1332(d)(11).  But

---

[10] Congress has legislated differences between original and removal jurisdiction in other contexts too.  For example, under the federal officer removal statute, 28 U.S.C. § 1442, "suits against federal officers may be removed despite the nonfederal cast of the complaint," *i.e.*, removal is possible even in circumstances in which a federal court would not have had original jurisdiction. *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999).

6

there is no express authority in section 1332 for original jurisdiction over mass actions, only for *removal* of a mass action originally filed in state court. 28 U.S.C. § 1332(d)(11)(A) ("a mass action shall be deemed to be a class action *removable*") (emphasis added).[11] As a leading treatise summarizes, "the law does not enable original jurisdiction over mass actions; it only states that such actions are subject to removal." *Newberg on Class Actions* § 6:24 (5th ed.)).[12]

Here, the three original Plaintiffs in the *Tweet* case were parties to several cases that were removed to federal court under CAFA's mass action provisions (as discussed, the transferor court then severed those three Plaintiffs from the mass actions to which they were parties and combined them into a new action against the ABCD Defendants). But jurisdiction over the 709 Plaintiffs added to the case through an amendment to the Complaint has (i) nothing to do with CAFA's mass action provisions—rather, jurisdiction over the newly-added Plaintiffs would exist (if at all) pursuant to 28 U.S.C. § 1332(b) (complete diversity)—and (ii) does not implicate CAFA's limitations on section 1407 transfer of removed mass actions. *See id.* § 1332(d)(11)(C)(i) (CAFA provision stating that "[a]ny action(s) *removed* to Federal court

---

[11] *Id.* (d)(11)(C)(i) (describing mass actions as those "removed to Federal court"); *id.* (d)(11)(D) ("mass action that is removed to Federal court"); *compare id.* § 1332(d)(2) (federal courts "shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is *a class action*") (emphasis added). Congress plainly could have created original jurisdictions over "mass actions" just as it chose to do with "class actions."

[12] Other courts and commentators have remarked upon this Congressional design. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1200 n.41 (11th Cir. 2007) ("Section 1332(d)(11)(A) provides that a mass action will be deemed a 'class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.' 28 U.S.C. § 1332(d)(11)(A). It would seem, if one looked solely to this provision, that Congress intended to confer only removal jurisdiction over mass actions. The provision clearly states that mass actions are removable and makes no mention of original jurisdiction."); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 682 (9th Cir. 2006) (per curiam) ("Congress's use of the word 'removable' in the text of § 1332, a statute establishing original jurisdiction, blurs what had previously been a clear distinction between jurisdiction and removal statutes"); *Boulanger v. Devlar Energy Mktg., LLC*, No. 3:15-CV-3032-B, 2015 WL 7076475, at *2-3 (N.D. Tex. Nov. 13, 2015) ("[C]ourts have original jurisdiction over class actions and 'a mass action shall be deemed to be a class action' for removal purposes. 28 U.S.C. § 1332(d)(11)(A)."); 2 *McLaughlin on Class Actions* § 12:9 (12th ed.).

pursuant to [the mass action provisions] shall not thereafter be transferred to any other court pursuant to section 1407 . . . unless a majority of the plaintiffs in the action request transfer pursuant to section 1407") (emphasis added).

*First*, as noted, although there is no original mass action jurisdiction, those 709 Plaintiffs originally filed their claims in federal court when the Complaint was amended. As a general matter, "it is well established that the amended pleading supersedes the original pleading." *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995). "Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . . [T]he original pleading, once superseded, cannot be utilized to cure defects in the amended pleading, unless the relevant portion is specifically incorporated in the new pleading." *Id*. (quoting 6 C. Wright, A. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1476 at 556-57, 559 (1990)). Consequently, where "an amendment to the pleadings alters the nature of the action . . . , jurisdiction must be reassessed at the time of the change." *Carlton v. Baww, Inc.*, 751 F.2d 781, 785 (5th Cir. 1985); *see also, e.g.*, *Lewis v. Odell*, 503 F.2d 445 (2d Cir. 1974); 13E C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3608.[13]

A court's subject matter jurisdiction must be established as to each party and each claim presented, and thus a new jurisdictional analysis must be conducted when a new plaintiff is joined: "As is the case under the general provision for the permissive joinder of plaintiffs and defendants in Rule 20, the requirements of federal subject-matter jurisdiction limit the ability to join new parties by a supplemental pleading." Wright & Miller, *Federal Practice & Procedure*

---

[13] *Accord Grady v. Irvine*, 254 F.2d 224, 226 (4th Cir. 1958) ("There is great difference . . ., between a formal substitution of a personal representative to prosecute the action in aid of the same right asserted by his decedent and an amendment or supplemental bill which changes the nature of the right asserted and alters the substance of the action. In the latter instance, jurisdiction should be re-examined in the light of the citizenship of all of the indispensable parties including those introduced upon allowance of the new pleading.").

§ 1507; *see, e.g.*, *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 280 (E.D. Pa. 2003) (Van Antwerpen, J.) ("the joinder of new plaintiffs requires a subject matter jurisdiction inquiry"); *id.* at 281 & n.12 ("Subject matter jurisdiction over a new claim is routinely analyzed in diversity cases when it is asserted for . . . a permissively joined party . . . .") (citations omitted).[14]  Therefore, to the extent that federal subject matter jurisdiction exists over the newly-added Plaintiffs it is through traditional, complete diversity jurisdiction, 28 U.S.C. § 1332(b): Each individually sought in excess of $75,000 exclusive of interests and costs, and the overwhelming majority are diverse from all defendants.  *See, e.g.*, Third. Am. Compl. ¶¶ 13-723.[15]

*Second*, even if *arguendo* the original three Plaintiffs are considered part of a "mass action" that was properly "removed to Federal court" and therefore cannot "be transferred . . . pursuant to section 1407," *id.*, none of the 709 newly-added Plaintiffs fits that requirement and therefore remain subject to transfer pursuant to 28 U.S.C. § 1407.  For the 709 new plaintiffs

---

[14] Any number of provisions in the federal rules and procedural statutes implicitly recognize that these jurisdictional analyses are necessary.  *See*, *e.g.*, Fed. R. Civ. P. 19(a), 28 U.S.C. § 1447(e); *see generally United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724-27 (1966) (joinder must be considered in tandem with subject matter jurisdiction).

[15] Plaintiffs' Motion is incorrect in suggesting that each of the newly-added Plaintiffs is properly in federal court pursuant to supplemental jurisdiction (if not mass action jurisdiction) under 28 U.S.C. § 1367.  *First*, where a plaintiff's claims give rise to federal jurisdiction, there is no need to resort to a supplemental jurisdiction analysis.  *See, e.g.*, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 249 n.8 (3d Cir. 2013) ("[S]upplemental jurisdiction under § 1367 . . . exists only when there is no independent basis for federal jurisdiction."); 13D C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567.1 n.36 ("The fact that [a] court ha[s] diversity of citizenship jurisdiction . . . render[s] the entire discussion of supplemental jurisdiction unnecessary.  Supplemental jurisdiction becomes relevant only when a court determines that it has no independent basis of subject matter jurisdiction—such as diversity jurisdiction—over a claim."); *see generally* 28 U.S.C. § 1367(c) (giving court the right to decline to exercise supplemental jurisdiction, which presupposes that such claims would not fall within a court's original jurisdiction because a federal court does not have discretion to decline to exercise original jurisdiction).  *Second*, supplemental jurisdiction is inapplicable on its face to cases in which federal jurisdiction is founded on a mass action removal, because section 1367(a) requires that the supplemental claims "are so related to claims in the action within such *original* jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a) (emphasis added).

who first asserted claims in federal court, they neither had their actions "removed to Federal court," nor were ever subject to mass action jurisdiction, let alone mass action removal. *Cf. In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 939 F. Supp. 2d 1376, 1378-81 (J.P.M.L. 2013) (holding Panel had authority pursuant to section 1407 to transfer claims removed on grounds in addition to section 1332(d)'s mass action provision); *accord In re Lipitor (Atorvastatin Calcium), Mktg., Sales Practices & Prods. Liab. Litig. (No. II)*, MDL No. 2502, 2014 WL 10790383, at *1 (J.P.M.L. June 6, 2014).[16] Accordingly, the statutory bar against section 1407 transfer cited by Plaintiffs is plainly inapplicable.

*Finally*, irrespective of whether the Panel views the three original *Tweet* Plaintiffs as subject to § 1407 transfer, at a minimum, the Panel should exercise its authority under Section 1407(a) to transfer to the MDL the 709 who *originally filed their claims in federal court* (rather having them removed as part of a mass action). 28 U.S.C. § 1407(a) ("the panel may separate any claim . . . and remand any of such claims before the remainder of the action is remanded"); *see, e.g.*, *In re 1980 Decennial Census Adjustment Litig.*, 506 F. Supp. 648, 650 (J.P.M.L. 1981) ("The Panel is empowered by statute to couple its order of transfer with a simultaneous separation and remand of any claims in an action."); *accord In re Countrywide Fin. Corp.*

---

[16] In *Darvocet*, the Panel held that there is no statutory provision or legislative history suggesting that Congress sought to restrict the Panel's ability to transfer any plaintiff whose claim was removed to federal court under "diversity or federal question grounds." 939 F. Supp. 2d at 1379. There is even less support for the notion that Congress sought to foreclose this Panel's ability to transfer claims *originally filed in federal court*, like the newly-added Plaintiffs' claims here, especially where diversity jurisdiction exists over them. *See id.* at 1379 n.2 ("CAFA also was intended to expand access to federal multidistrict litigation."); *id.* at 1380 (rejecting interpretation of § 1332 that "would effect a partial repeal of the authority conferred by Section 1407 without any clear indication of legislative intent to do so"); *Lipitor*, 2014 WL 10790383, at *2 (same). Even if it were possible to read § 1332(d) to create original jurisdiction over mass actions in certain circumstances (which it is not), the 709 new Plaintiffs here essentially have been fraudulently joined to the former mass action for the sole purpose of defeating section 1407 transfer, not because there is any indication that they "proposed to . . . tr[y] [their claims] jointly" with the original three plaintiffs under multiple bodies of substantive state law, 28 U.S.C. § 1332(d)(11)(B)(i), or that they sought to join their claims to the original three plaintiffs for anything but "consolidated or coordinated . . . pretrial proceedings," *id.* § 1332(d)(11)(B)(ii)(IV).

*Mortg.-Backed Secs. Litig.*, 812 F. Supp. 2d 1380, 1383-84 (J.P.M.L. 2011); *In re Vioxx Mktg., Sales Practices & Prods. Liab. Litig.*, 416 F. Supp. 2d 1354, 1355 (J.P.M.L. 2006); Federal Judicial Center, *Manual for Complex Litigation* § 20.131 (4th ed. 2004) ("[S]ection 1407(a) . . . empowers the Panel to accomplish 'partial' transfer by (1) transferring an action in its entirety to the transferee district, and (2) simultaneously remanding to the transferor district any claims for which transfer was not deemed appropriate . . . ."). Rather than immediately remanding the three original *Tweet* Plaintiffs to the transferor court, however, the most efficient course likely would be to transfer the entirety of the *Tweet* case to the MDL pursuant to section 1407 where Judge Lungstrum then can assess whether "mass action" removal jurisdiction exists over the original three Plaintiffs.[17]

### B.   Plaintiffs' arguments against transfer fail, for several reasons.

The Panel should reject Plaintiffs' apparent argument that no part of this action can be transferred pursuant to section 1407 (they do not address section 1407(a)) simply because a part of it was once a removed mass action.

*First*, Plaintiffs' argument should be rejected categorically because it threatens core purposes of section 1407 and Congress's designs. They suggest that once a "mass action" has been removed to federal court, then any and all new actions, with new plaintiffs, can be joined to that supposedly indivisible, monolithic "mass action." Mot. 8-9. Plaintiffs' argument, effectively, is that anything goes, including the potential destruction of existing MDLs, once a

---

[17]   These issues regarding the scope and nature of the federal district court's jurisdiction over the various Plaintiffs are for the transferee and/or transferor courts, not this Panel. *See* 28 U.S.C. § 1407 (defining the Panel's jurisdiction); *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) ("Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case . . . .") (citing *In re Air Crash Disaster at Florida Everglades on Dec. 29, 1972*, 368 F. Supp. 812, 813 n.1 (J.P.M.L. 1973)); *In re Robert Reedom Litig.*, 65 F. Supp. 3d 1414, 1415 (J.P.M.L. 2014) (same). *Cf.* Mot. 3 (acknowledging that the transferor court ruled on CAFA jurisdiction over the three *Tweet* Plaintiffs *before* the latest round of amendments that added 709 new plaintiffs and changed the complexion of this case).

removed mass action happens to land in a forum perceived to be more favorable than the MDL court.  Under Plaintiffs' view, for example, counsel could continue to amend the complaint in the removed mass action to include thousands more plaintiffs (notwithstanding that as with nearly 700 Plaintiffs here, those plaintiffs are diverse and seek sums exceeding the amount-in-controversy).

Likewise, Plaintiffs' erroneous view would suggest that, once a mass action has been removed, the existing plaintiffs or any new plaintiffs could add new claims (as the new Plaintiffs did here), including putative class action claims, without *any* possibility that the action could ever be transferred pursuant to § 1407.  *Contra Darvocet*, 939 F. Supp. 2d at 1378 (quoting legislative history supporting that Congress sought to have "'the claims of all proposed classes could be handled efficiently on a coordinated basis pursuant to the federal courts' multidistrict litigation process as established by 28 U.S.C. § 1407'").  All of this, of course, would undermine what an MDL is designed to achieve, and it would effectuate the sort of implied repeal of section 1407 that the Panel held in *Darvocet*, 939 F. Supp. 2d at 1380, and reaffirmed in *Lipitor*, 2014 WL 10790383, at *2, was contrary to Congress's intent.  The Panel should reiterate those principles and reject the notion that Congress intended, or even could have conceived, that the removal of a mass action would forever foreclose transfer pursuant to section 1407 (and section 1407(a)) irrespective of how that action morphed post-removal.[18]

---

[18] Without dealing with these very real consequences that are immediately on display here, Plaintiffs invite the Panel to "consider the logical extreme of ADM's position: that a mass action with thousands of plaintiffs removed to federal court (not subject to transfer under 28 U.S.C. § 1332(d)(11)) could be transferred to an MDL shortly before a consolidated trial on the merits if just one plaintiff was added to that civil action." Mot. 8.  But the Panel's organic statute makes clear that such determinations are made pursuant to the Panel's discretionary "determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  The Panel has "unusually broad discretion" and "substantial authority" in carrying out its functions and in deciding how the cases under its jurisdiction should be coordinated.  *In re Collins*, 233 F.3d 809, 811-12 (3d Cir. 2000).  As a result, the scenario Plaintiffs describe would not come to pass.

12

*Second*, failure to grasp the repercussions of their position aside, the cases and statutory provisions upon which Plaintiffs rely do not demonstrate that section 1407 transfer is unavailable.  Plaintiffs cite no authority to suggest that the addition of parties or claims to what once was a mass action removed to federal court insulates those new parties or claims from transfer, let alone forecloses the operation of section 1407(a).  Instead, consistent with the discussion *supra* pp. 3-6, Plaintiffs rely on authorities (*see* Mot. 5, 6 & n.5 (collecting cases)) that merely stand for the proposition that post-removal events, including severance, ordinarily do not divest a court of federal jurisdiction (including CAFA jurisdiction).[19]  But that has nothing to do with the transfer analysis at issue here because the 709 new Plaintiffs' claims are *not* governed by CAFA's mass action provisions.

*Third*, consistent with their failure to recognize that the 709 Plaintiffs have nothing to do with the originally removed mass action for purposes of section 1407 transfer, Plaintiffs lodge a sweeping attack on transfer premised on a definition of "action" for the purposes of the transfer bar that is both irrelevant and strained.  Plaintiffs read section 1332(d)(11)(C)(i)'s transfer bar to encompass and prohibit the transfer of any and all additional actions and claims that may subsequently be added via amendment.  *See, e.g.*, Mot. 8.  At the outset, Plaintiffs' argument re-writes section 1332(d)(11).  *See* Mot. 4 ("The *civil action* referenced in Section 1332(d)(11)(C)(i) . . . .") (emphasis added).  Although section 1332(d) defines a "'mass action'"

---

[19] As the Seventh Circuit, upon whose decisions Plaintiffs primarily rely, has recognized, "[t]here are . . . exceptions to the principle that once jurisdiction, always jurisdiction." *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010).  For example, "if the plaintiff amends away jurisdiction in a subsequent pleading, the case must be dismissed." *Id*.  "Although *normally* 'jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments,'" that rule "applies mainly in cases where the amended complaint attempts to destroy federal jurisdiction after the case has been properly removed." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (citation omitted; emphasis added)).  Here, in contrast, Plaintiffs did not amend their complaint to destroy federal jurisdiction.  They attempted to inappropriately shoehorn hundreds of additional plaintiffs into a federal case in a transparent attempt to undermine the efficacy of an existing MDL.

as a particular type of "civil action," 28 U.S.C. § 1332(d)(11)(B)(i); *id*. (d)(11)(B)(ii) (exempting certain types of "civil action" from the definition of "mass action"), its prohibition on section 1407 transfer does not speak of "civil action[s]." Rather, it is more limited and speaks of "[a]ny *action(s)* removed to Federal court pursuant to this subsection," *id*. (d)(11)(C)(i) (emphasis added)—*i.e.*, multiple "actions," not a single, indivisible "action." And each new plaintiff, of course, has his or her own action or cause of action. Thus, Plaintiffs' attempt to predicate an argument against transfer on the definition of "civil action" stumbles out of the gate. But, even if the section 1407 prohibition hinged on "civil action," courts have properly reasoned, in analogous contexts, that "an amendment to the pleadings [may] *alter[] the nature of the action*," *Carlton*, 751 F.2d at 785 (emphasis added); *see also supra* at 8 & n.13 (discussing amended pleadings), and that "[a]mendments [can] in principle initiate litigation." *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 749 (7th Cir. 2005). In determining whether an amendment effectively begins a new civil action, courts, including the Seventh Circuit, look to whether the amendment is merely "routine." *See, e.g.*, *Phillips v. Ford Motor Co.*, 435 F.3d 785, 786 (7th Cir. 2006); *Schorsch*, 417 F.3d at 749. Clearly, the amendment at issue here is not "routine," and there is no question that, as to the new plaintiffs, the amended complaint constituted the commencement of their "action." Indeed, Plaintiffs' interpretation of the term "action" would significantly broaden the transfer bar and undermine the purpose of multidistrict litigation.

Plaintiffs' "civil action"-based argument also is in tension with guidance from the Supreme Court and CAFA itself, which recognize that the analysis of federal jurisdiction within a particular case is multi-faceted, not monolithic. As the Supreme Court has explained:

> We cannot accept the view, urged by some of the parties, commentators, and Courts of Appeals, that a district court lacks original jurisdiction over a civil action unless the court has original jurisdiction over every claim in the complaint. As we understand

> this position, *it requires assuming either that all claims in the complaint must stand or fall as a single, indivisible 'civil action' as a matter of definitional necessity*—what we will refer to as the 'indivisibility theory'—or else that the inclusion of a claim or party falling outside the district court's original jurisdiction somehow contaminates every other claim in the complaint, depriving the court of original jurisdiction over any of these claims—what we will refer to as the 'contamination theory.' The indivisibility theory is easily dismissed, as it is inconsistent with the whole notion of supplemental jurisdiction. If a district court must have original jurisdiction over every claim in the complaint in order to have "original jurisdiction" over a 'civil action,' then in *Gibbs* there was no civil action of which the district court could assume original jurisdiction under § 1331, and so no basis for exercising supplemental jurisdiction over any of the claims.

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 560-61 (2005) (emphasis added); *see also* 28 U.S.C. § 1332(d)(11)(B)(i) (providing that mass action jurisdiction "shall exist *only over those plaintiffs* whose claims" exceed $75,000) (emphasis added).[20]

*Fourth*, Plaintiffs argue that, even if original federal jurisdiction is lacking as to the 709 new plaintiffs, "Plaintiffs would still be afforded federal jurisdiction absent diversity jurisdiction pursuant to 28 U.S.C. § 1367(a)." Mot. 6. But this puts the cart before the horse. Supplemental jurisdiction is available only where the court has original jurisdiction, and here, as explained above, district courts lack original mass action jurisdiction over any of plaintiffs. *See* 28 U.S.C. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction . . . ."); *see also supra* n.12 and accompanying text; *accord Allapattah Servs.*, 545 U.S. at 558. The notion that the 709 additional claims are brought under the federal supplemental jurisdiction statute, if anything, *undercuts* Plaintiffs' position that

---

[20] *Cf.* Mot. 8, 9 (relying on the definition of "civil action" applied in one case, *Weekley v. Guidant Corp.*, 392 F.Supp.2d 1066, 1067 (E.D. Ark. 2005), to argue—*contra Allapattah*—that this case must be viewed as indivisible because its earlier iteration was removed under CAFA).

15

these claims are in federal court pursuant to removal jurisdiction under CAFA's mass action provisions.

*Fifth*, Plaintiffs make much of the fact that "none of the Defendants opposed Plaintiffs' motion for leave that added 709 plaintiffs." Mot. 2, 5-6, 8. But that has nothing to do with whether and how federal subject matter jurisdiction exists as to the newly-joined Plaintiffs, or whether the claims are now transferrable pursuant to section 1407. Plaintiffs cite no authority supporting the proposition that an initial lack of opposition to an amended complaint and joinder of additional parties is remotely relevant to these issues,[21] or even a subsequent challenge to joinder itself. *See* Fed. R. Civ. P. 21 (recognizing that a court can drop a party "at any time").

*Finally*, similarly unpersuasive is Plaintiffs' assertion that "[a]s a practical matter, had the 709 plaintiffs filed their lawsuits individually in state court, their lawsuits would likely have landed before Judge Herndon" because "Syngenta or ADM likely would have removed the lawsuits to federal court." Mot. 7 n.8. This is not a strike against transfer. If the cases were originally filed in state court, then removed pursuant to diversity jurisdiction and assigned to Judge Herndon, they would be subject to section 1407 transfer. (Of course, if these Plaintiffs originally filed their individual actions in federal court, they too would be subject to section 1407 transfer.) The transfer here thus accomplishes precisely what should have occurred had Plaintiffs not appended them to an existing mass action in a transparent attempt to forum shop and undermine the federal MDL process.

---

[21] Federal subject matter jurisdiction is not waivable, *e.g.*, *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982), and the ABCD Defendants have not yet filed a responsive pleading and thus have preserved all 12(b)(2) and (b)(3) defenses with respect to the newly-added Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Panel should deny Plaintiffs' motion to vacate CTO-63. In the alternative, the Panel should only grant Plaintiffs' motion to vacate as it concerns the original three plaintiffs who were severed from the original mass actions and deny the motion to vacate as it concerns the other 709 plaintiffs.

Respectfully submitted,

Dated: June 28, 2016                    /s/   David F. Graham

David F. Graham
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
dgraham@sidley.com
Tel: (312) 853-7000
Fax: (312) 853-7036

Eamon P. Joyce
Nicholas M. McLean
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
ejoyce@sidley.com
Tel: (212) 839-5400
Fax: (212) 839-5599

*Attorneys for Archer Daniels Midland Company*

Todd W. Ruskamp
Ann Songer
SHOOK HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108-2613
truskamp@shb.com
asonger@shb.com
Tel: (816) 474-6550
Fax: (816) 421-5547

*Attorneys for Bunge North America, Inc.*

John W. Ursu
Kathryn N. Hibbard
X. Kevin Zhao
GREENE ESPEL PLLP
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
jursu@greeneespel.com
khibbard@greeneespel.com
kzhao@greeneespel.com
Tel: (612) 373-0830
Fax: (612) 373-0929

*Attorneys for Cargill, Incorporated*

Claude M. Stern
Patrick C. Doolittle
David E. Myre
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Drive
Redwood Shores, CA 94065
claudestern@quinnemanuel.com
patrickdoolittle@quinnemanuel.com
davidmyre@quinnemanuel.com
Tel: (650) 801-5000
Fax: (650) 801-5100

*Attorneys for Louis Dreyfus Company LLC*